**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,

        Plaintiff,

        v.

THE RUSSIAN FEDERATION, *et al.*,

        Defendants.

Civil Action No.:    24-2523 (RC)

Re Document No.:    40

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR RECONSIDERATION

### I. INTRODUCTION

Plaintiff Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower") seeks reconsideration of the Court's earlier decision granting motions to dismiss filed by The Russian Federation ("Russia"), the Ministry of Health of the Russian Federation ("Ministry of Health"), and Almazov (collectively, "Defendants"). Pls.' Mem. P. & A. Supp. Mot. Recons. ("Pls.' Mem.") at 1, ECF No. 40-1. This Court previously found that Watch Tower had not properly served Defendants pursuant to 28 U.S.C. § 1608 and thus granted Defendants' motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *See Mem. Op. at 16, 17, ECF No. 39*. Watch Tower now argues that the Court should conclude that service on Almazov was proper or, alternatively, revise its order to permit Watch Tower to perfect service on all Defendants rather than dismiss for lack of subject matter jurisdiction due to insufficient service of process. Pls.' Mot. for Recons. at 1, ECF No. 40. Although the Court declines to find that service was proper, the Court will permit Watch Tower to perfect service on all Defendants.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

The Administrative Centre of Jehovah's Witnesses in Russia ("Administrative Centre"), the nationally-recognized religious entity for Russian Jehovah's Witnesses, operated a national headquarters in St. Petersburg known as the Bethel Facility.  Mem. Op. at 2.  The Administrative Centre transferred the Bethel Facility to Watch Tower, a U.S. non-profit organization, through registered gift contracts in 2000 and 2010.  *Id.*  But in 2017, Russia declared the Administrative Centre an extremist organization, banned its activity, confiscated its assets, and liquidated its entire operation.  *Id.* at 2–3.  The Bethel Facility was still in Watch Tower's name, so in an effort to seize that property, Russia initiated legal proceedings to void the 2000 and 2010 gift contracts.  *Id.* at 3. A Russian court annulled the gift contracts as fictitious and determined that because the Administrative Centre had continued to possess and exercise control over the Bethel Center, it was the effective owner of the property.  *Id.* at 3–4.  Watch Tower's appeals to establish ownership were unsuccessful.  *Id.* at 4.  In 2019, Russia permanently transferred the Bethel Facility to Almazov, a state-owned medical research facility, and they continue to deny Watch Tower access to the property, which is valued at over $30 million USD.  *Id.*

The European Court of Human Rights ("ECHR") held that Russia's liquidation of the Administrative Centre violated international law.  *Id.*  Accordingly, it ordered Russia to either return the Bethel Center to the Administrative Centre or pay damages.  *Id.*  However, Russia passed legislation removing itself from the court's jurisdiction and refused to comply or compensate either Watch Tower or the Administrative Centre.  *Id.* at 5.  In 2024, Watch Tower initiated this action against Defendants, claiming that Defendants' seizure of the Bethel Facility was unlawful.  *Id.*.

---

[1] The Court presumes familiarity with the underlying facts and law, which are described in the Court's prior memorandum opinion. *See generally* Mem. Op. What follows is a high-level overview.

2

Specifically, Watch Tower brought suit under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602–11, and sought damages pursuant to 28 U.S.C. § 1606. *Id.* at 1, 5.

Almazov moved to dismiss the complaint for lack of subject matter and personal jurisdiction; for insufficient process and service of process; and for failure to state a claim. *Id.* at 5. Russia and the Ministry of Health jointly filed a motion to dismiss, generally making the same arguments.[2] *Id.* Watch Tower filed oppositions to both, and Defendants each filed a reply.[3] *Id.* at 5–6. In its memorandum opinion on September 22, 2025, the Court granted both Russia and Almazov's motions to dismiss without prejudice. *Id*. at 18. The Court found that it lacked personal jurisdiction under Rule 12(b)(2) because Watch Tower had not properly served either Defendant in accordance with § 1608. *Id.* at 16–18.

In its prior opinion, the Court explained that Watch Tower, as an FSIA plaintiff, must properly serve a foreign defendant in accordance with 28 U.S.C. § 1608 for the Court to have personal jurisdiction over Defendants. *Id.* at 7; *see also I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which subject matter jurisdiction exists under the FSIA, so long as the defendant was properly served." (citation modified)). Regarding Russia, the Court further explained that Watch Tower's attempt to serve by mail was insufficient for two reasons:

---

[2] The Court hereafter refers to Russia and the Ministry of Health collectively as "Russia."

[3] In Almazov's opposition to Watch Tower's motion for reconsideration, it urged the Court that if it "were inclined to grant reconsideration of its dismissal without prejudice and deem service on the Almazov Centre to be an effective form of service, . . . this Court should proceed directly with resolving the Almazov Centre's other defenses presented in its motion to dismiss." Defs.' Opp'n to Pl.'s Mot. for Recons. at 6, ECF No. 41. Watch Tower thus filed a notice of supplemental authority addressing that portion of Almazov's motion (i.e., Almazov's other defenses). Pl.'s Suppl. Authority, ECF No. 44. However, the Court need not address Watch Tower's supplemental authority nor Defendants' response to it because the Court denies Watch Tower's motion for reconsideration in that respect. *See infra* pp. 7–9.

first, service by mail is categorically unavailable in Russia, and second, § 1608(a) requires strict compliance, which Watch Tower did not satisfy. *Id.* at 10. When Russia acceded to the Hague Convention, it formally objected to Article 10, which governs service of court documents on foreign parties. *See Declaration/Reservation/Notification*, Hague Conf. on Private Int'l L (July 19, 2016), https://perma.cc/PW3H-TZXX ("Service of documents by methods listed in Article 10 of the Convention is not permitted in the Russian Federation."). Courts in this circuit have therefore determined that service by mail is categorically impermissible in Russia. *See, e.g.*, *Azadeh v. Gov't of the Islamic Republic of Iran*, 318 F. Supp. 3d 90, 99 (D.D.C. 2018) (explaining that "the method of service proscribed in section 1608(a)(3) is categorically unavailable when attempting to serve those countries" that "specifically objected to service by mail when they acceded to the Hague Convention"); *see also* Mem. Op. at 11–12 (collecting cases saying the same). However, the Court made clear in its prior opinion that Watch Tower was not without service options; it could still employ the FSIA's fourth method for service on a foreign state: service through diplomatic channels. *See* 28 U.S.C. § 1608(a)(4); Mem. Op. at 14. Accordingly, the Court dismissed the claims against Russia under Rule 12(b)(2) without prejudice. Mem. Op. at 16.

As for Almazov, the Court similarly found that Watch Tower had not effected service after attempting to do so by mail under § 1608(b)(3)(B). *Id.* at 17 ("Because this action is governed by the [Hague] Convention and Russia has objected to service by mail, Almazov's service by courier was legally deficient."). The Court observed that Watch Tower could invoke the other methods outlined in § 1608(b)(3) to serve Almazov and dismissed the complaint without prejudice. *Id.* at 18.

Watch Tower filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b).  Pls.' Mot. for Recons. at 1.  Rather than dismiss the complaint for ineffective service of process, Watch Tower requests that this Court revise its order to: (1) vacate the Court's dismissals; (2) allow Watch Tower 180 days to serve Russia through diplomatic channels, pursuant to 28 U.S.C. § 1608(a)(4); and (3) find that Watch Tower properly served Almazov pursuant to 28 U.S.C. § 1608(b)(3)(C), or alternatively, grant Watch leave to serve Almazov pursuant to 28 U.S.C. § 1608(b)(3)(C).  Specifically, Watch Tower requests permission to effectuate service on Almazov by email to its General Manager or its United States counsel, through diplomatic channels within 180 days, or by any combination of the three methods.  *Id.* at 1–2, 9.

Chief among its arguments is that the Court should have elected to quash Watch Tower's defective service, rather than dismiss the case without prejudice.  Pls.' Mem. at 3–5 (arguing that "[c]ourts in this district have repeatedly followed this approach in the interests of justice and judicial efficiency" and that such action would not prejudice Defendants).  Watch Tower further asserts that its efforts in Russian courts and before the ECHR have failed to provide meaningful relief, and that granting its requests here would allow this case to proceed expeditiously toward resolution.  *Id.* at 5.  Watch Tower argues that it is within the Court's discretion and would be in the interests of justice to revise its order to permit it to serve Russia and Almazov through the above-mentioned alternatives.  *Id.* at 5–6.

Regarding service on Almazov specifically, Watch Tower asks the Court to construe § 1608(b) as imposing less stringent requirements and, on that basis, to conclude that, even if service was "technically faulty," Almazov nonetheless received actual notice of this litigation and was properly served.  *Id.* at 7–8.  Finally, despite the Court's conclusion that service by mail was "categorically unavailable" in this instance, Watch Tower provides an example of one federal court

5

that has ordered service by mail on a foreign sovereign that objects to Article 10 of the Hague Convention. *Id.* at 7.

### III.  LEGAL STANDARD

Watch Tower moves for reconsideration under Federal Rule of Civil Procedure 54(b), which "governs reconsideration of orders that do not constitute final judgments in a case." *Cobell v. Norton*, 224 F.R.D. 266, 271 (D.D.C. 2004); *see also* Fed. R. Civ. P. 54(b) (providing that Rule 54(b) governs "any order or other decision . . . that adjudicates fewer than all the claims . . . of fewer than all the parties"). Under Rule 54(b), a district court has "broad discretion to hear a motion for reconsideration," *Isse v. Am. Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008), and may grant one "as justice requires." *Reps. Comm. for Freedom of the Press v. F.B.I.*, 754 F. Supp. 3d 56, 63–64 (D.D.C. 2024) (quoting *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014)). "[A]sking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell*, 355 F. Supp. 2d at 539. "Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *Isse*, 544 F. Supp. 2d at 29. But because "the decision whether to reconsider its interlocutory rulings is within the Court's discretion . . . the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so," even "if the appropriate legal standard does not indicate that reconsideration is warranted." *Cobell*, 355 F. Supp. 2d at 540.

## IV.  ANALYSIS

Watch Tower's motion for reconsideration raises two distinct issues concerning service of process.  First, Watch Tower contends that the Court should reconsider its conclusion that service on Almazov was improper, arguing that service by mail was permissible and that any deficiencies in service should be excused for substantial compliance.  Second, Watch Tower requests that, even if service was deficient, the Court should permit it additional time to cure any such deficiency and serve Defendants through diplomatic channels.  The Court addresses each argument in turn.

### A.  Service on Almazov Was Improper.

The Court first addresses Watch Tower's arguments regarding service on Almazov, namely, that service by mail is not categorically impermissible and that Almazov did, in fact, effect service through "technically faulty" methods under § 1608(b).  Pls.' Mem. at 6–9.  As the Court noted in its memorandum opinion, Watch Tower did "not identify a single case where a federal court permitted service on a defendant in Russia—or Russia itself—by mail."  Mem. Op. at 13. Now, Watch Tower points to an example of one federal court that ordered service by mail on a country that has objected to Article 10 of the Hague Convention.  Pls.' Mem. at 7 (discussing *Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*, No. 1:19-CV-23113, 2021 WL 3907803, at *2 (S.D. Fla. Sep. 1, 2021)).  But that case, which is not controlling on this Court, does not constitute an intervening change in law for purposes of a motion for reconsideration, as it was decided in 2021, before Watch Tower initiated this action.  *See Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1296 (D.C. Cir. 2004) (finding no abuse of discretion in denial of motion for reconsideration where "dismissal of [plaintiffs'] suit might have been avoided through the exercise of due diligence" and denying plaintiff's motion in which he demanded an initial consideration of new arguments).

Motions for reconsideration cannot be used as "a vehicle for presenting theories or arguments that could have been advanced earlier." *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010). Given the substantial weight of authority concluding that service by mail is impermissible when a country has expressly objected to that method under the Hague Convention—which the Court outlined in its prior opinion—Watch Tower's newly cited example is not compelling.

Watch Tower also requests, with respect to service on Almazov, that this Court apply less stringent requirements to § 1608(b) and conclude that, although service may have been "technically faulty," Almazov nonetheless received actual notice of this litigation. Pls.' Mem. at 7–9. It is true that some courts have applied less exacting standards on a party effecting service on foreign agencies or instrumentalities under § 1608(b). *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260, 268 (D.D.C. 2011) (concluding that "substantial compliance with the provisions of service upon an agency or instrumentality of a foreign state—that is, service that gives actual notice . . . to the proper individuals within the agency or instrumentality—is sufficient to effectuate service under section 1608(b)" (quoting *Magness v. Russian Fed'n*, 247 F.3d 609, 618 (5th Cir. 2001)). However, as noted in the Court's prior memorandum opinion, service by mail on Almazov is legally deficient, as it is governed by Russia's objection to Article 10 of the Hague Convention. Mem. Op. at 17–18. Substantial compliance presupposes a legally authorized method of service at the outset. So, where that method is categorically impermissible, as is the case here, there can be no basis for claiming substantial compliance under the less stringent standards of § 1608(b). Further, "the Hague Convention is a treaty; as such it necessarily 'pre-empts inconsistent methods of service prescribed by . . . [subordinate] law in all cases to which it applies.'" *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 103 (D.D.C. 2005) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (further reiterating that

when the Hague Convention applies, it takes precedence over FSIA requirements); *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505, 2012 WL 299959, at *2 (S.D.N.Y. Jan. 31, 2012) ("[D]istrict courts cannot circumvent the Hague Convention at whim."). As such, this Court rejects Watch Tower's argument that it properly served Almazov under § 1608(b) and denies Watch Tower's motion in this respect.

**B. The Court Will Permit Watch Tower to Perfect Service Through Diplomatic Channels.**

In the alternative, Watch Tower requests that the Court revise its order to allow it 180 days to effectuate service upon Russia and Almazov through diplomatic channels (or other methods).[4] Pls.' Mem. at 1–2. When considering whether to afford plaintiffs the opportunity to properly effect service, courts must determine whether there is "good cause" for the initial failure to effect service.[5] *Morrissey v. Wolf*, 333 F.R.D. 1, 2 (D.D.C. 2019), *aff'd sub nom. Morrissey v. Mayorkas*, 17 F.4th 1150 (D.C. Cir. 2021). Good cause exists "when some outside factor . . . rather than inadvertence or negligence, prevented service." *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (quoting *Lepone–Dempsey v. Carroll Cnty. Com'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007)). Here, Watch Tower failed to properly effect service because it misapprehended the law, mistakenly believing that service by mail is permissible in Russia. "And, of course, *ignorantia juris non excusat*." *Morrissey*, 333 F.R.D. at 2; *see also Klayman v. Obama*, 125 F. Supp. 3d 67, 77 (D.D.C. 2015) (explaining that attorney mistake or ignorance of the rules governing service do not establish

---

[4] Specifically, Watch Tower requests to effectuate service on Almazov by any or a combination of the following methods: (1) emailing Almazov's General Manager; (2) emailing Almazov's U.S. counsel; and/or (3) through diplomatic channels. Pl.'s Mot. for Recons. at 1–2.

[5] In FSIA cases, courts have afforded the plaintiff an opportunity to properly effect service for good cause shown. *See, e.g.*, *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29 (D.C. Cir. 2015); *Ellenbogen v. Canadian Embassy*, No. CV 05-1553, 2006 WL 8450006, at *3 (D.D.C. Apr. 26, 2006).

"good cause"). Nevertheless, "if a plaintiff fails to show good cause, the district court must still consider whether any additional factors . . . would warrant a permissive extension of time" to perfect service. *Lepone–Dempsey*, 476 F.3d at 1282 (collecting cases). Therefore, a court can nonetheless grant such an extension if warranted by the "circumstances" or "the facts of the case." *Id.*

In this case, the facts warrant such an extension. Defendants have actual notice of this lawsuit despite improper service and would suffer little, if any, prejudice. *See Angelich v. MedTrust, LLC*, 910 F. Supp. 2d 128, 132 (D.D.C. 2012) ("[W]here Defendant has actual notice of Plaintiff's claim . . . and where no prejudice would inure to Defendant from quashing service, the Court sees no reason to dismiss the case." (citation modified)). And "there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983); *see also Barot*, 785 F.3d at 29. As this Court noted previously, although service via mail is unavailable, "Watch Tower still has access to the FSIA's fourth method for service of a foreign state: service through diplomatic channels." Mem. Op. at 14. (citing 28 U.S.C. § 1608(a)(4)). Now, the Court will permit Watch Tower to pursue that method of service. *See Przewozman v. Islamic Republic of Iran*, 628 F. Supp. 3d 307, 318 (D.D.C. 2022) ("Even if a party 'has not complied with the service of process requirements,' the Court has discretion to permit the party to give it another go, rather than dismiss the case." (quoting *Candido v. District of Columbia*, 242 F.R.D. 151, 164 (D.D.C. 2007))). Permitting Watch Tower to perfect service would serve the interests of justice and judicial economy, as it would allow this lawsuit to proceed. *See Brown v. Austrian Airlines*, No. CV-97-3798 (CPS), 1997 WL 913334, at *4 (E.D.N.Y. Dec. 9, 1997) ("[A]llowing plaintiff to perfect service at this time ensures compliance with the words and spirit of the FSIA and allows the lawsuit to go forward." (citation modified)); *see also Reps. Comm. for*

*Freedom of the Press v. F.B.I.*, 754 F. Supp. 3d 56, 63–64. (D.D.C. 2024) (explaining that a district court may grant a motion for reconsideration for "other good reasons" and "as justice requires"). Accordingly, the Court's dismissal is vacated, and Watch Tower shall have 180 days from the date of the Court's corresponding order to serve Defendants through diplomatic channels.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff Watch Tower's motion for reconsideration (ECF No. 40) is **GRANTED IN PART and DENIED IN PART.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 23, 2026                                      RUDOLPH CONTRERAS
                                                                   United States District Judge